# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SHEILA SANGER OLDHAM, | Case No. CV 09-1431-JEM |
| Plaintiff, |  |
| v. | MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, |  |
| Defendant. |  |

## PROCEEDINGS

On February 27, 2009, Plaintiff Sheila Sanger Oldham ("Plaintiff") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability benefits under Title II of the Social Security Act.  (AR 29, 51, 79.)  On June 10, 2009, the Commissioner filed an Answer to the Complaint.  On November 19, 2009, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge.  The matter is now ready for decision.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with law and with this Memorandum Opinion and Order.

**BACKGROUND**

Plaintiff was born on September 11, 1959.  (AR 32, 79.)  She was 46 years old on her alleged disability onset date of April 29, 2006, and 49 years old at the time of the hearing before the Administrative Law Judge ("ALJ") on September 16, 2008.  (AR 20, 26, 32, 99.)  Plaintiff has a high school education and attended some college.  (AR 20, 33, 108).  Plaintiff has past relevant work as a mammogram x-ray technician and has worked as an aircraft buyer and a tutor.  (AR 20, 33-35, 91-92, 109-10.)  Plaintiff also served in the United States military.  (AR 79.)

Plaintiff filed an application for benefits with a protected filing date of November 6, 2006.  (AR 51.)  Plaintiff claims she is disabled due to bulging discs in her neck and back; pain in her knees, including chondromalacia in her right knee;[1] bursitis in both hips and pain in her right hip; and obesity.  (AR 52, 99.)  Plaintiff has not engaged in substantial gainful activity since April 29, 2006.  (AR 14, 52.)

Following an initial denial of Plaintiff's claim on January 26, 2007 (AR 52 et seq.), Plaintiff filed a timely Request for Hearing on March 5, 2007, before an ALJ, claiming that she could not sit for 6 hours or walk for 2 hours in an 8-hour workday.  (AR 57.)  A hearing was held on September 16, 2008, and Plaintiff was represented by an attorney at the hearing.  (AR 12, 26 et seq.)  No vocational expert ("VE") appeared or testified at the hearing.  (See AR 26-27.)

On October 14, 2008, the ALJ denied Plaintiff's application at step five of the sequential evaluation.  The ALJ found that, although Plaintiff could not perform her past relevant work, she could perform other work in the economy and that, therefore, Plaintiff had not been under a disability from April 29, 2006, through October 14, 2008, the date of the ALJ's decision.  (See AR 12-21.)  The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for the full range of sedentary work and decided that,

---

[1]  "Chondromalacia" is abnormal softness of cartilage.  See Merriam-Webster Online Medical Dictionary at http://www2.merriam-webster.com (as viewed July 2010).

considering Plaintiff's age, education, and work experience, a finding of "not disabled" was directed by Rule 201.21 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids").[2]  (AR 21.)

On October 20, 2008, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Social Security Administration (AR 7), and on January 23, 2009, the Appeals Council affirmed the ALJ's decision.  (AR 1.)  As noted, Plaintiff commenced this action on February 27, 2009.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal or remand of the ALJ's decision:

1.      Whether the ALJ provided legally sufficient reasons for rejecting Plaintiff's credibility, including Plaintiff's claims of chronic pain and resulting limitations on sitting and standing; and

2.      Whether the ALJ properly rejected the opinions of treating physicians Dr. Richard Docherty and Dr. Stephen Yacoubian in favor of other examining and non-examining physicians' opinions.  (See JS at 2-3.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotations and

---

[2]  Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1).

1   citations omitted).  This Court must review the record as a whole and consider adverse as

2   well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

3   2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's

4   decision must be upheld.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  "However,

5   a reviewing court must consider the entire record as a whole and may not affirm simply by

6   isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting

7   Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d

8   625, 630 (9th Cir. 2007).

9                               **DISCUSSION**

10         The Court reverses the ALJ's decision and remands for further proceedings.  The

11   ALJ relied solely on the grids to find that Plaintiff was not disabled and did not call a VE to

12   testify at the hearing.  However, the record supports Plaintiff's claims that she suffers from

13   severe non-exertional impairments, including significant and frequent pain and limitations in

14   sitting and standing and a need for frequent breaks due to pain, that affect her ability to

15   work.  The ALJ's discounting of Plaintiff's subjective pain complaints was not supported by

16   the record.  When Plaintiff's non-exertional limitations due to pain are properly credited, the

17   ALJ's reliance on the grids, without the testimony of a VE, is inadequate to establish at step

18   five that Plaintiff could perform other work in the economy.

19         **A.**    **The Sequential Evaluation**

20         The Social Security Act defines disability as the inability "to engage in any substantial

21   gainful activity by reason of any medically determinable physical or mental impairment

22   which can be expected to result in death or . . . can be expected to last for a continuous

23   period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

24   Commissioner has established a five-step sequential process to determine whether a

25   claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

26         The first step is to determine "whether the claimant is presently engaging in

27   substantially gainful activity."  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the

28

1    claimant is engaging in substantially gainful activity, disability benefits will be denied.

2    Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the

3    claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.

4    An impairment is not severe if it does not significantly limit the claimant's ability to work.

5    Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ, however, must consider

6    the combined effect of all the claimant's impairments on his or her ability to function,

7    regardless of whether each alone is sufficiently severe.  Id.  Also, the ALJ must consider the

8    claimant's subjective symptoms in determining severity.  Id.

9         Third, the ALJ must determine whether the impairment is listed, or equivalent to an

10   impairment listed, in Appendix I of the Social Security Regulations.[3]  Parra, 481 F.3d at 746.

11   If the impediment meets or equals one of the listed impairments, the claimant is

12   presumptively disabled.  Bowen, 482 U.S. at 141.

13        Fourth, the ALJ must determine whether the impairment prevents the claimant from

14   doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the

15   claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and

16   must determine whether the impairment prevents the claimant from performing any other

17   substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

18        The claimant bears the burden of proving steps one through four, consistent with the

19   general rule that, at all times, the burden is on the claimant to establish his or her

20   entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established

21

22

23        [3] Social Security Regulations ("SSRs"), according to the governing regulations, "are
     binding on all components of the Social Security Administration" and "represent precedent
24   final opinions and orders and statements of policy and interpretations" of the SSA.  Bray v.
     Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (citation omitted).  SSRs
25   reflect the official interpretation of the SSA and are entitled to "some deference" as long as
     they are consistent with the Social Security Act and regulations."  Bray, id. (citation and
26   internal quotation marks omitted).  SSRs do not carry the "force of law," but they are binding
     on ALJs nonetheless.  Bray, id. (citing Quang Van Han v. Bowen, 882 F.2d 1453, 1457 &
27   n.6 (9th Cir. 1989)).

28

by the claimant, the burden shifts to the Commissioner to show that the claimant may

perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.    ALJ's Opinion, Parties' Contentions.**

The ALJ found that Plaintiff has the following severe combination of impairments:

biomechanical neck and low back pain, secondary to cervical disc disease at C3-4, and

lumbar disc disease at L5-S1; degenerative joint disease of the right knee, degenerative

joint disease of the right foot; subacromial impingement syndrome of the left shoulder; and

obesity.  (AR 14.)  The ALJ acknowledged that Plaintiff's combined impairments cause

"significant limitation in the [Plaintiff's] ability to perform basic work activities"; and the ALJ

stated that he based this finding on the opinions of the consultative examiners Dr. William

Boeck and Dr. R. Moore.  (AR 15.)  The ALJ also found that Plaintiff has depressive

disorder, but he did not find this impairment to be severe.  (AR 15-16.)  Based on these

findings, the ALJ found that Plaintiff had no restriction of activities of daily living; no difficulty

in maintaining social functioning; mild difficulty in maintaining concentration, persistence or

pace; and no episodes of decompensation.  (AR 15.)  Consequently, the ALJ found that

Plaintiff's impairments or combination of impairments did meet the criteria for any listed

impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 15-16.)  The ALJ

specifically found that Plaintiff's obesity, alone or in combination with Plaintiff's other

impairments, did not rise to the level of a listed impairment.  (AR 16.)

The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work.

(AR 16.)  Specifically, the ALJ found that Plaintiff can lift 10 pounds occasionally and 10

pounds frequently [sic]; stand and walk with normal breaks for a total of 2 hours in an 8-hour

workday; sit with normal breaks for a total of 6 hours in an 8-hour workday; and frequently

bend, kneel, crawl, and climb.  (AR 16.)

In making this RFC determination, the ALJ rejected the opinion of Plaintiff's treating

physicians, Dr. Richard Docherty and Dr. Stephen Yacoubian, stating that the opinions of

these treating sources were not supported by the objective evidence or the treatment

records.  (AR 18, citing 20 C.F.R. § 4041527(d)(2).)  The ALJ also found that, while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these impairments were not credible.  (AR 19.)  In light of these findings and Plaintiff's RFC for the full range of sedentary work, together with Plaintiff's education, her work experience, and her age – which the ALJ noted was defined as "a younger individual age 45-49" – the ALJ stated that there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform.  (AR 20, citing 20 C.F.R. §§ 404.1560(c) and 404.1566.)  Accordingly, the ALJ stated that a finding of "not disabled" was directed under Rule 201.21 of the grids.  (AR 21.)

Plaintiff contends that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's claims of pain and restrictions due to pain.  See JS at 3-4, citing Lester v. Chater, 81 F.3d 921, 934 (9th Cir. 1995).  In particular, Plaintiff argues that MRIs show a broad based disc bulge at L5-S1 affecting the L5 and S1 nerve roots (AR 17, 185); a lateral tile of patella and small joint effusion at the right knee (AR 17, 194); a loss of lordosis, and a left-sided disc / osteophyte complex at C3-C4 causing compromise to her left neural foramen and disc bulges at C5-C6 and C6-C7 (AR 17, 182); and an EMG study suggesting mild C5-C6 nerve irritation.[4]  See JS at 4.  Plaintiff argues that this medical evidence supports Plaintiff's claims of pain and limitation due to these conditions.  Plaintiff also complains that the ALJ did not adequately discuss or analyze the fact that Plaintiff's primary complaint is pain.  (JS at 10, citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).)

Plaintiff also argues that both of Plaintiff's treating physicians, Dr. Docherty and Dr. Yacoubian, found that Plaintiff was not capable of sedentary work.  (JS at 4, citing AR 505, 624-25.)  Plaintiff argues that both Dr. Docherty and Dr. Yacoubian mentioned in their treating notes that Plaintiff had severe limitations.  (JS at 17, citing AR 387, 388-93, 405,

---

[4]  Lordosis is an exaggerated forward curvature of the lumbar and cervical regions of the spinal column.  See Merriam-Webster Online Medical Dictionary at http://www2.merriam-webster.com/cgi-bin/mwmedsamp (as viewed in July 2010).

1  407, 556-58, 575, 584, and 609).  Dr. Docherty opined that Plaintiff could sit, stand or walk

2  for less than 2 hours; and Dr. Docherty also opined that Plaintiff has side effects from her

3  medications; and Plaintiff complains that the ALJ did not adequately consider the

4  consequences of these side effects.  (JS at 4, citing AR 505.)  Dr. Yacoubian noted that

5  Plaintiff was limited to 2 hours of sitting and walking, and needed to take unscheduled

6  breaks every hour or two for 15 to 30 minutes at a time.  (JS at 4-5, citing AR 624-25.)

7         Defendant argues, inter alia, that the ALJ properly rejected Plaintiff's subjective

8  complaints of pain and other limitations using ordinary credibility techniques, including

9  consideration of Plaintiff's daily activities.  (JS at 7-8, 10.)  Defendant argues that Plaintiff's

10  treatments were conservative, undermining her claims of severe pain.  (See JS at 9, citing

11  20 C.F.R. § 404.1529(c).)  Defendant also argues that the ALJ permissibly rejected the

12  opinions of treating physicians Dr. Docherty and Dr. Yacoubian in favor of examining

13  physicians Dr. Boeck and Dr. Moore and reviewing physician A.H. Resnik.  (JS at 8, citing

14  AR 346-56, 639-50.)

15         **C.     The ALJ's Decision Is Not Supported by Substantial Evidence.**

16         Because Plaintiff established at step four of the sequential evaluation that she was

17  not able to perform her past relevant work, the Commissioner has the burden at step five of

18  showing that Plaintiff could perform other work that exists in significant numbers in the

19  national economy.   Lounsburry v. Barnhart, 468 F.3d at 1114-15.  The Commissioner can

20  meet this burden in two ways:  (1) through the testimony of a VE, or (2) by reference to the

21  Medical-Vocational Guidelines, that is, the grids.  See Osenbrock v. Apfel, 240 F.3d 1157,

22  1162 (9th Cir. 2001); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d at 1223 (in making a

23  step five determination, ALJ may rely on grids at 20 C.F.R. Part 404, Subpart P, App. 2).

24         The grids provide a system "for disposing of cases that involve substantially uniform

25  levels of impairment."  Desrosiers v. Sec'y of Health & Human Services, 846 F.2d 573, 578

26  (9th Cir. 1988) (Pregerson, J., concurring).  The grids correlate a claimant's age, education,

27  previous work experience, and RFC to direct a finding of disabled or not disabled, without

28

1   the need of testimony from vocational sources or vocational experts.  See SSR 83-12; see

2   also Cooper v. Sullivan, 880 F.2d at 1155; Heckler v. Campbell, 461 U.S. 458, 461 (1983)

3   (Brennan, J., concurring) (ALJ has duty of inquiry in case under grids to inquire into

4   exertional limitations that prevent full range of work).  However, there are strict rules on

5   when an ALJ may rely on the grids.  See Desrosiers, 846 F.2d at 578 (Pregerson, J.,

6   concurring).  An ALJ may only substitute the grids for vocational expert testimony when they

7   "completely and accurately represent a claimant's limitations."  Tackett v. Apfel, 180 F.3d at

8   1101 (emphasis in original); see also Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir.

9   2001).  This means that "a claimant must be able to perform the full range of jobs in a given

10  [exertional] category"  for the grids to apply.  Tackett, 180 F.2d at 1101 (emphasis in

11  original); see also Burkhart, 856 F.2d at 1340.  Because "the grids are predicated on a

12  claimant suffering from an impairment which manifests itself by limitations in meeting the

13  strength requirements of jobs[,] they may not be fully applicable" for a claimant's

14  non-exertional limitations.  Lounsberry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). The

15  mere allegation of a nonexertional limitation, however, does not preclude the use of the

16  grids.  For the grids to be inadequate, the nonexertional limitation must be "'sufficiently

17  severe so as to significantly limit the range of work permitted by the claimant's exertional

18  limitations.'"  Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting Burkhart, 856

19  F.2d at 1340); see also Desrosiers, 846 F.2d at 577.  When "a claimant's nonexertional

20  limitations are in themselves enough to limit his range of work, the grids do not apply, and

21  the testimony of a vocational expert is required to identify specific jobs within the claimant's

22  abilities."  Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir.1988); see also Thomas, 278 F.3d

23  at 960 (when grids do not adequately take into account claimant's abilities and limitations,

24  grids are to be used only as framework, and VE must be consulted).

25          Here, the ALJ has rejected the opinions of Plaintiff's treating physicians regarding

26  Plaintiff's RFC in favor of opinions from examining and consulting physicians.  In evaluating

27  medical opinions, the case law and regulations distinguish among the opinions of three

28

9

1   types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

2   examine but do not treat the claimant (examining physicians); and (3) those who neither

3   examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R.

4   §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.

5        In general, an ALJ must accord special weight to a treating physician's opinion

6   because a treating physician "is employed to cure and has a greater opportunity to know

7   and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

8   1989) (citation omitted).  If a treating source's opinion on the issues of the nature and

9   severity of a claimant's impairments is well-supported by medically acceptable clinical and

10  laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in

11  the case record, the ALJ will give it "controlling weight."  20 C.F.R. § 404.1527(d)(2).

12       Furthermore, where the treating doctor's opinion is not contradicted by another

13  doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.

14  However, if the treating physician's opinion is contradicted by another doctor, such as an

15  examining physician, the ALJ may reject the treating physician's opinion by providing

16  specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81

17  F.3d at 830-31; see also Orn v. Astrue, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947,

18  957 (9th Cir. 2002).  Where a treating physician's opinion is contradicted by an examining

19  professional's opinion, the Commissioner may resolve the conflict by relying on the

20  examining physician's opinion if the examining physician's opinion is supported by different,

21  independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995);

22  Orn, 495 F.3d at 632 (ALJ may reject opinion of treating physician in favor of examining

23  physician whose opinion rests on independent clinical findings).  However, "[t]he opinion of

24  a non-examining physician cannot by itself constitute substantial evidence that justifies the

25  rejection of the opinion of either an examining physician or a treating physician;" such an

26  opinion may serve as substantial evidence only when it is consistent with and supported by

27  other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at

28  600.

1    At the threshold, this Court must resolve the issue of whether Plaintiff has the RFC to

2    perform sedentary work.  If Plaintiff cannot perform any type of sedentary work at any level

3    she must be found disabled.  See, e.g., Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir.

4    2004) (where evidence establishes that claimant cannot perform any sedentary job due to

5    pain and fatigue, remand would serve no useful purpose and immediate award of benefits

6    warranted).  Arguably, the ALJ could credit the opinion of Dr. Boeck over the opinions of

7    Drs. Dockerty and Yacoubian because Dr. Boeck examined Plaintiff and performed his own

8    independent tests on her.  The record reflects that Dr. Boeck saw Plaintiff on one occasion,

9    on or about January 16, 2007, and noted that Plaintiff was 64 inches tall, that is, 5' 4", and

10   weighed 262 pounds at that time.  (See AR 346-47.)  After conducting several tests,

11   Dr. Boeck concluded that Plaintiff was limited to lifting and carrying 20 pounds occasionally,

12   and 10 pounds frequently; and that Plaintiff could stand and walk for up to 2 hours in an

13   8-hour workday, and sit for 6 hours in an 8-hour workday.  (See AR 350.)  These findings

14   are consistent with an RFC for sedentary work.  See 20 C.F.R. §§ 404.1567(a) (sedentary

15   work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying

16   articles like docket files, ledgers, and small tools.")  However, Dr. Boeck's opinion provides

17   no discussion or analysis of Plaintiff's subjective complaints, including her chronic pain or

18   her limitations due to pain.  Accordingly, Dr. Boeck's findings do not provide legitimate

19   reasons for the ALJ to reject the opinions of Plaintiff's treating physicians concerning her

20   pain or limitations due to pain.

21   Likewise, the opinions of examining physicians Dr. Moore and Dr. Brawer or

22   consulting physician Dr. Resnick do not refute the opinions of Plaintiff's treating physicians

23   concerning her pain or limitations due to pain.  Dr. Moore performed a psychological

24   evaluation on Plaintiff on or about June 16, 2008.  (See AR 639-48.)  Dr. Moore described

25   Plaintiff as "morbidly obese" (AR 640), 64" tall and 246 pounds, and noted that Plaintiff "had

26   difficulty standing on her heels and toes because of pain." (AR 641.)  Dr. Moore opined that

27   Plaintiff did not evidence active radiculopathy and appeared to be cognitively intact (AR

28   642), but he noted "orthopedic limitation." (AR 648.)   However, Dr. Moore's opinion

provides no discussion or analysis of Plaintiff's subjective complaints, including her chronic pain or her limitations due to pain.  Dr. Brawer performed a psychological evaluation on Plaintiff on July 1, 2008, and while he found that Plaintiff could perform certain work-related tasks, his report also offered no discussion or analysis of Plaintiff's subjective complaints. (See AR 628-34.)  Dr. Resnick performed an RFC assessment based on a record review, and noted that Plaintiff can stand for sit for 15 to 45 minutes and stand for 15 to 45 minutes. (See AR 418-422.)  These findings to not address Plaintiff's subjective pain complaints or definitively refute the opinions of the treating physicians.

Thus, while there is some evidence in the record that Plaintiff retains the functional capacity to meet the lifting requirements of sedentary work, the opinions of the examining and consulting physicians on the credibility of Plaintiff's subjective complaints, or on the effect of pain on the Plaintiff's ability to perform sedentary work, are incomplete.  In contrast, the longitudinal records from Drs. Docherty and Yacoubian opine that Plaintiff has significant limitations due to pain.  Dr. Docherty, who treated Plaintiff for her back and neck pain from at least July 2006 through April 2008, found that Plaintiff's pain was constant and chronic, moderate to severe in intensity, and limited her to sitting and standing for about 45 minutes. (See AR 217, 501-03.)    Dr. Docherty found that Plaintiff can sit for 20 minutes at a time and stand for 10 to 15 minutes.  (AR 505.)  Dr. Docherty opined that Plaintiff needs a job where she can shift positions at will and take unscheduled breaks every 15 to 30 minutes. (See AR 506.)  Dr. Yacoubian, who operated on Plaintiff's foot, found that Plaintiff can only sit for 20 minutes, stand for 20 minutes, and sit and stand/walk for less than 2 hours, and Plaintiff must walk for at least 5 minutes every 45 minutes.  (See AR 621-24.) Dr. Yacoubian also opined that Plaintiff will need to take unscheduled breaks, and that her legs should be "elevated" for 70% of an 8-hour workday.  (AR 625.)  None of the examining or consulting opinions cited by the ALJ directly contradict these opinions or refute the treating physician's opinions for specific, legitimate reasons.

Furthermore, the ALJ's discounting of the credibility of Plaintiff's claims of pain and functional limitation is also not supported by the evidence in the record.  In evaluating

1   whether subjective complaints are credible, the ALJ should first consider objective medical

2   evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th

3   Cir.1991) (en banc).  The regulations state that because symptoms, such as pain, are

4   subjective and difficult to quantify, any symptom-related functional limitations and

5   restrictions which the claimant, or a treating or nontreating source or other persons report,

6   and which can reasonably be accepted as consistent with the objective medical evidence

7   and other evidence, will be considered by the ALJ in reaching a disability determination.

8   20 C.F.R. § 404.1529(c)(3).  Factors relevant to pain symptoms which the ALJ will consider

9   include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity

10  of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage,

11  effectiveness, and side effects of any medication the claimant takes or has taken to alleviate

12  pain or other symptoms; (5) treatment, other than medication, the claimant receives or has

13  received for relief of  pain or other symptoms; (6) any measures the claimant uses or has

14  used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20

15  minutes every hour, sleeping on a board, etc.); and (7) other factors concerning the

16  claimant's functional limitations and restrictions due to pain or other symptoms. See 20

17  C.F.R. § 404.1529(c)(3) (i)-(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ

18  also may consider applicant's reputation for truthfulness, prior inconsistent statements or

19  other inconsistent testimony, or unexplained or inadequately explained failure to seek

20  treatment or follow prescribed course of treatment); see also SSR 96-7P; SSR 88-13.

21  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's

22  reasons for rejecting the claimant's testimony must be "clear and convincing."  Valentine v.

23  Comm'r, 574 F.3d 685, 693 (9th Cir. 2009); Morgan v. Commissioner of Social Sec. Admin.,

24  169 F.3d 595, 599 (9th Cir. 1999) ("Without affirmative evidence showing that the claimant

25  is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be

26  clear and convincing.").

27      Here, the ALJ acknowledged that Plaintiff's medically determinable, combined

28  impairments cause "significant limitation in the [Plaintiff's] ability to perform basic work

13

activities" (AR 15); and the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (AR 19.)  Nevertheless, the ALJ found that Plaintiff has "no restriction of activities of daily living" (AR 15) and stated that Plaintiff's daily activities "are not consistent with the alleged degree of pain or impairment." (AR 19.)  The ALJ found that Plaintiff could do "light household chores such as rinsing dishes, dusting, wiping down the bathroom, and doing one load of laundry a day," and therefore concluded that Plaintiff "is able to spend a substantial party of the day in activities involving the performance of functions readily transferable to competitive work." (AR 19-20.)  Likewise, the ALJ discounted the treating physicians' opinions about Plaintiff's pain, stating "these treating physicians appear to be advocating for the claimant to receive benefits, rather than simply treating her," and stating that "if [Plaintiff] actually required the limitations posed by these doctors, they would have been regularly recorded in the treatment notes." (AR 19.)

This Court does not find these reasons persuasive.  First, the Court notes that Plaintiff has described her pain as follows:  "The best way I can describe the pain is that I have a circular saw blade sandwiched between the vertebrae in my lower back." (AR 122.) "I have constant neuropathy in my left foot that turns to burning pain with increased activity." (AR 122.)  "I feel like there is an ice pick sticking out of the left side of my neck." (AR 122.) "My neck pain increases every minute that I am upright." (AR 124.)

No source has accused Plaintiff of malingering; thus, the ALJ's reasons for discounting Plaintiff's claim must be "clear and convincing."  See Valentine 574 F.3d at 693; Morgan, 169 F.3d at 599.  The record is replete with Plaintiff's complaints of chronic pain and Plaintiff's restrictions due to the alleged pain.  As the ALJ acknowledges, the record evidences medically determinable impairments, such as Plaintiff's bulging discs and obesity, that could certainly cause pain symptoms.  Plaintiff testified at the hearing that she can only stand in place 5 or 10 minutes without discomfort and then she has to sit down; that she can sit for 10 to 15 minutes and then she has to lie down; and that she has to lie down every half-hour. (AR 43.)  She can walk about 30 feet without pain or discomfort, and she

1    alternates her positions to relieve pain.  (AR 44.)  The record is replete with Plaintiff's

2    statements to treating and examining physicians relating similar complaints.

3           Contrary to the ALJ's suggestion that Plaintiff pursued only conservative treatment,

4    or could have pursued more intensive treatment, the record reflects numerous treatments,

5    over the course of many months, from several providers, and includes several instances of

6    lumbar epidural steroid injections into Plaintiff's spine that were performed in operation-like

7    settings.  (See, e.g., AR 321-24, 345, 390-96.)  These procedures evidence the lengths to

8    which Plaintiff went to obtain pain relief.  The length of the record over time, the intensity of

9    certain procedures, and the evidence of the numerous medications that Plaintiff took to

10   alleviate pain render any argument that Plaintiff's treatment was "conservative"

11   unconvincing.  The record is also undeveloped as to what effect Plaintiff's obesity might

12   have on surgical options.

13          Similarly, the ALJ's characterization of Plaintiff's daily activities, and their

14   transferability to the work setting, is not convincing.  The fact that Plaintiff may be able to

15   wash a few dishes, wipe down a bathroom, or do a load of laundry does not constitute

16   convincing evidence that Plaintiff could handle the more rigorous demands of the workplace.

17   Plaintiff states that some days she can accomplish some household chores "with short rests

18   in between, other days it increases my pain level so that I have to rest for the rest of the

19   day."  (AR 128.)  "Doing small chores around the house such as dusting or wiping down the

20   counter must be followed by a rest period."  (AR 150.)  Furthermore, the daily activities cited

21   by the ALJ do not contradict or preclude Plaintiff's claims that she can only sit or stand for

22   short periods and needs to re-adjust her posture constantly to manage her pain.  To

23   constitute a basis for finding allegations of disabling pain not credible, the claimant's daily

24   activities must be rigorous enough to be a fair proxy for the demands of work; but the

25   transferability of Plaintiff's daily activities to the workplace is particularly uncertain in a case

26   like this where the ALJ did not call on a VE to identify jobs in the available occupational

27   base that Plaintiff might be able to perform in spite of her limitations.  Cf. Fair v. Bowen, 885

28   F.2d 597, 603 (9th Cir. 1989) (daily activities may be reason to discredit excess pain

allegation if claimant is able to spend a substantial part of the day performing activities that are transferable to a work setting).

The ALJ also does not explicitly consider the side effects of Plaintiff's numerous medications, which Plaintiff complained to Dr. Docherty included dizziness, constipation, nausea, fatigue, loss of concentration, memory loss, and drowsiness.  (AR 505.)

Taken together, the record reflects that Plaintiff has significant pain and significant limitations due to pain.  In light of this evidence, the ALJ's discounting of Plaintiff's credibility is not convincing.  As such, these are non-exertional impairments that affect Plaintiff's ability to perform work.  See Macri v. Chater, 93 F.3d 540, 545 (9th Cir.1996) ("Pain is a nonexertional limitation which is not included in the medical vocational guidelines.").  Where, as here, a claimant has both severe exertional and non-exertional impairments that limit her ability to perform the full range of sedentary work, the grids do not apply.  See, e.g., Tackett v. Apfel, 180 F.3d at 1103-04 (vocational expert testimony necessary because claimant's need to shift, stand up, or walk around every thirty minutes is significant nonexertional limitation not contemplated by grids); Polny, 864 F.2d at 663-64 (grids inapplicable because, although claimaint was "capable of performing a wide range of jobs," he could not perform ones that were "highly stressful," that "require[d] comprehension of complex instructions," or "require[d] dealing with the public").  Accordingly, since the ALJ was not entitled to rely solely on the grids in finding Plaintiff "not disabled," the case must be remanded for further consideration of Plaintiff's ability to perform sedentary work.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding for further proceedings in accordance with law and with this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 19, 2010                          */s/ John E. McDermott*
                                              JOHN E. MCDERMOTT
                                              UNITED STATES MAGISTRATE JUDGE

16